JOHN S. WILSON and LEONARD A. POEHLMANN, trading as WILSON & POEHLMANN *vs.* JAMES NELSON HERBERT.

*Specific performance—Construction of Contract for Sale of Land.*

On the 1st of January 1887, H. leased a lot to B. for three years at the rent of $180 a year payable in monthly instalments. The lease contained the following stipulation: "The said H. hereby agrees to sell and convey to the said B. all of the said land and improvements, by a good and sufficient lawful deed, at any time during the term of the lease, whenever the said B. shall elect by giving ten days' notice in writing to the said H. or his legal representatives, for the sum of two thousand dollars in cash; provided that all the rent due and owing is fully paid, and, further, that the said B. shall pay at the time of purchase the full amount of rent that would become due at the expiration of this lease." In January, 1889, B. in consideration of $1150 assigned all his interest in the lease to W. and P., partners; and H. in consideration of $50. agreed, by writing under seal, to the assignment, and also agreed to convey the lot to W. and P. for the sum of $2000 "as herein specified." On the 19th of December, 1889, H., by an instrument under seal, continued the lease for three months from the 1st of January then next ensuing, and renewed his agreement to convey the lot to W. and P. "as specified in said lease." Shortly before the 1st of April 1890 W. and P. requested of H. a few days delay in the payment of the money, and he at first consented, but afterwards withdrew his consent. The money was provided for the purchase a few days after the 1st of April, but H. being then absent, W. called on him about the 15th of April, for the purpose of paying the purchase money and receiving a deed, when H. refused to execute the contract. On a bill filed by W. and P. against H. for a specific performance of the contract, it was HELD:

1st. That by the failure to pay the purchase money on the appointed day, the complainants committed a default, but they did not thereby forfeit their right of purchase, as the time of payment was not of the essence of the contract.

2nd. That the substantial part of the contract was that the vendor should be paid his price for his property, and there was no special or important object to be attained by payment of the money at a precise point of time, and H. would be amply compensated for the delay of payment by receiving interest. on the purchase money.

3rd. That the complainants were not required to give ten days' notice in writing of their intention to purchase, according to the requirement of the contract, as that intention was sufficiently indicated by the subsequent acts and conduct of the parties.

4th. That as it appeared in evidence that the complainants continued in possession after the refusal to make a conveyance to them and paid rent up to April, 1891, they ought to be regarded as owners from April 1st, 1890, and ought to pay interest on the purchase money from that day, so long as they had remained in possession, and to be allowed a rebate of the amount of rent which they had paid.

5th. That they were entitled to a decree for a conveyance of the property on payment to the vendor of the sum thus found to be due.

Where the terms of an agreement have not been strictly complied with, or are incapable of being strictly complied with, still, if there has not been gross negligence in the party, and it is conscientious that the agreement should be performed, and if compensation may be made for any injury occasioned by the non-compliance with the strict terms—in all such cases Courts of equity will interfere and decree a specific performance.

APPEAL from the Circuit Court for Prince George's County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued for the appellants before ALVEY, C. J., BRYAN, FOWLER, and BRISCOE, J., and submitted for the appellee. It was subsequently re-argued on notes, and PAGE and MCSHERRY, J., participated in the decision.

Wilson and Poehlmann *vs.* Herbert.

*Charles H. Stanley,* for the appellants.

It is an established rule in equity that where the terms of an agreement for the sale of land have not been strictly complied with, still if there has not been gross negligence in the party, and it is in accord with good conscience that the agreement be performed, Courts of equity will interfere and decree a specific performance. And "if circumstances of a reasonable nature have disabled the party from a strict compliance, or if he comes, *recenti facto,* to ask for a specific performance, the suit is treated with indulgence and generally with favor by the Court." *Story's Equity,* sec. 776 ; *Maughlin vs. Perry,* 35 *Md.,* 352 ; *Smoot vs. Rea & Andrews,* 19 *Md.,* 398.

The testimony in this case establishes the fact that the appellants were prepared to pay the $2,000 shortly after the first of April, 1890, and at most, not more than two weeks had elapsed before they offered the money and requested the deed, (even by the testimony of the appellee himself); that the appellee was absent on the first of April on the grand jury, and the money was offered him the first day after he returned ; that he even then did not positively refuse, but said "he would see further about it before he would execute it."

His conduct throughout was such as to mislead the appellants. He was willing to give them a year longer in December, and, by his own testimony, offered to do so He was at first willing, late in March, to extend the time, but afterwards changed his mind.

He misled them by his conduct, waived his right as to the ten days' notice, and released them from a strict compliance.

The conduct of the appellee was acquiescence, and he acquiesced in every proposition to extend the time until the money was actually tendered, when he hesitated. *Watkins vs. Hodges,* 6 *H. & J.,* 39 ; *Coates, et al. vs. Sangston, &c.,* 5 *Md.,* 121–131.

Wilson and Poehlmann *vs.* Herbert.

Time is not ordinarily of the essence of the contract, and parties will not be suffered to take advantage of it to defeat an otherwise meritorious cause of action—whether or not time is to be considered of the essence of the contract is to be viewed in the light of the circumstances surrounding the case. *Scarlett vs. Stein,* 40 *Md.,* 512; *Derrett vs. Boarman,* 61 *Md.,* 526; *Maughlin vs. Perry,* 35 *Md.,* 352; *Davis vs. Robert,* 89 *Ala.,* 402; *Jones vs. Robbins,* 50 *Am. Dec., note, page* 497; *Pomeroy on Specific Performance, sec.* 371.

The circumstances that will make time of the essence of the contract must be such that the party resisting cannot be placed *in statu quo. Maughlin vs. Perry,* 35 *Md.,* 352.

Time will not be essential where circumstances of a reasonable nature have prevented a party from compliance in that particular. *Garrettson vs. Vaulom,* 54 *Iowa,* 492; *Young vs. Daniels,* 2 *Iowa,* 126, 63 *Am. Dec.,* 477.

Under the original agreement of lease as made to Bond, and the other agreements made with the appellants, the option of purchase extended during the lease, and the appellee having, by accepting rent regularly, renewed the lease after the first of April, 1890, the option to purchase was also extended. The appellants were, after April 1, 1890, tenants from year to year, and not tenants by sufferance, and the lease being renewed, the right to purchase was extended. *Hall vs. Myers,* 43 *Md.,* 446.

The principles of equity applied by this Court in applications for renewals of leases will be applied in this case to the right of redemption of a lessee who has paid for all the improvements on the land, a large interest to the owner of the fee, and a very few days after the time limited, by the strictest construction of the contract, tendered a full value for the land; and the Court will consider the facts surrounding the case, and as the

appellee has had full compensation, will not work a forfeiture of the rights of the appellants. *Banks vs. Haskie,* 45 *Md.,* 207; *Worthington vs. Lee,* 61 *Md.,* 530.

While, as a general rule, there must be mutuality of obligation and remedy in an agreement to convey land, this principle does not apply to this case, as this contract to convey is an unilateral contract. *Pomeroy on Specific Performance, sec.* 169; *Iron Age Pub. Co. vs. W. U. Tel. Co.,* 83 *Ala.,* 489; *Davis vs. Robert,* 89 *Ala.,* 402.

This agreement is "fair, just, reasonable, *bona fide,* &c.," made upon a good consideration, and merits the interposition of the Court. *Griffith vs. Frederick County Bank,* 6 *G. & J.,* 283; *Stoddert vs. Bowie's Ex'r, et al.,* 5 *Md.,* 35; *Gelston, et al. vs. Sigmund,* 27 *Md.,* 334; *O'Brien vs. Pentz,* 48 *Md.,* 562; *Shriver vs. Seiss,* 49 *Md.,* 384.

The price paid by the appellants to Bond was for the improvements on the land, and on the agreement of the appellee, for which $50 was paid, that they could protect themselves by purchase, the $450 was spent in improvements on the faith of the same contract, and as the appellee would get full value for the land, an affirmance of this decree would be forfeiture, which Courts of equity never aid.

*George C. Merrick,* for the appellee.

To entitle the appellants to the benefit of the option to purchase the property at $2,000—they should have given ten days' notice in writing to the appellee or his legal representatives of the intention of the appellants to purchase, and this choice or offer to purchase should have been exercised during the continuance of said original lease as extended in writing, and before the same expired by express limitation, as therein stated.

Time was material in this case, and one of the elements of the contract. The appellants had the privilege of *buying or not,* as they thought advantageous, but

the appellee was bound by contract not to sell, no matter how advantageous an offer he might have had, until the time had passed within which the lessees might exercise their option, consequently there was a want of mutuality on the obligations arising from this transaction, and time was of the essence of the contract. *Maughlin vs. Perry*, 35 *Md.*, 357, 359, 360; *Grabenhorst vs. Nicodemus*, 42 *Md.*, 236, 246, 249.

The appellants were guilty of laches in not making any arrangements or efforts to raise the money to purchase said property within the time limited, and therefore their claim to purchase after the time is without equity. *Maughlin vs. Perry*, 35 *Md.*, 359, *near bottom; Smoot vs. Rea, et al.*, 19 *Md.*, 406, *bottom;* 2 *Story's Equity*, sec. 771.

There was no extension of the time beyond 1st April, 1890, and even if there was, *it was not* in writing and therefore not binding.

The price paid by appellants, $1150, to Mr. Bond, for the assignment of the lease with the option, shows how valuable this privilege was and is, and this is an element tending to show the materiality and importance of time in this agreement or lease. *Grabenhorst vs. Nicodemus*, 42 *Md.*, 236.

The remaining of the tenant in possession and receipt of some rent by the lessor after and since 1st April, 1890, does not in law continue the original lease with this valuable option, but only fixes the character of the tenancy. *Hall vs. Myers*, 43 *Md.*, 446, 450.

BRYAN, J., delivered the opinion of the Court.

Wilson and Poehlmann filed a bill in equity against James N. Herbert for the specific performance of a contract for the sale of land. On the first day of January, eighteen hundred and eighty-seven, Herbert leased a lot in the town of Laurel to Thomas M. Bond for the term of

three years, at the rent of one hundred and eighty dollars a year, payable in monthly instalments. The lease contained the following stipulation : "The said James N. Herbert hereby agrees to sell and convey to the said Thomas M. Bond all of the said land and improvements by a good and sufficient lawful deed, at any time during the term of the lease, whenever the said Thomas M. Bond shall elect by giving ten days' notice in writing to the said Herbert or his legal representatives, for the sum of two thousand ($2,000) dollars in cash, provided that all the rent due and owing is fully paid, and further, that the said Bond shall pay at the time of purchase, the full amount of rent that would have become due at the expiration of this lease." In January, eighteen hundred and eighty-nine, Bond, in consideration of eleven hundred and fifty dollars, assigned all his interest in the lease to Wilson and Poehlmann, partners, and Herbert in consideration of fifty dollars agreed by writing under seal to the assignment, and also agreed to convey the lot to Wilson and Poehlmann for the sum of two thousand dollars "as herein specified," meaning, of course, as specified in the lease. On the nineteenth of December, eighteen hundred and eighty-nine, Herbert by an instrument under seal continued the lease for three months from the first of January then next ensuing, and renewed his agreement to convey the lot to Wilson and Poehlmann "as specified in said lease." He proposed to make the extension for twelve months, but Wilson and Poehlmann preferred three months, stating that they wished to pay for the place soon and save the rent. They had erected on the premises an office and store room at an expense of about four hundred dollars. Shortly before the first of April, eighteen hundred and ninety, they requested of Herbert a few days delay in the payment of the money, and he at first consented to grant it ; but within a few hours afterwards withdrew

his consent, stating that he wanted the money. There was evidence that Wilson and Poehlmann inferred from Herbert's conversation and conduct, that he would receive the money if tendered shortly after the first of April, and would then execute a deed for the property; but there is nothing in the evidence which shows an agreement to that effect on his part. The money was provided for the purchase shortly after the first of April; at that time Herbert was absent in Upper Marlboro, and on his return to Laurel about the fifteenth of April, Wilson called on him for the purpose of paying the purchase money and receiving a deed for the lot. He refused, however, to execute the contract of sale, saying to Wilson "you have failed to meet your agreement, and I will not sell you the place." At the hearing the Court dismissed the bill, and the complainants appealed.

There can be no doubt whatever that it was the purpose of the complainants to purchase this lot, and that this purpose was well known to Herbert. It would not be rational to suppose that they would pay eleven hundred and fifty dollars for a lease of this property having less than a year to run, and would pay for the privilege of purchasing it, and would also expend four hundred dollars in improvements unless they intended to purchase. Whatever may have been the case previously, Herbert could have had no doubt in December, eighteen hundred and eighty-nine, of their intention to purchase. When they applied at that time for an extension of the lease, he proposed to continue it for twelve months; but they objected to so long a time, stating that they wished to pay for it soon and save the rent. In the agreement which Herbert then executed he expressly renewed the original right of purchase. In the negotiations between the parties in March, eighteen hundred and ninety, the only question agitated was whether a delay would be granted in the payment of the money; because the election

of the complainants to buy the property was regarded as fully settled. The money not being paid on the appointed day, the complainants committed a default; and if the time of payment was of the essence of the contract, they thereby forfeited their right of purchase. In deciding a question of this kind, Courts of equity examine the stipulations of the contract, and also consider the nature and circumstances of the transaction. The object is to ascertain the leading and controlling intention of the contracting parties, and to carry this into effect; although there may have been a failure to comply with subsidiary stipulations, which were introduced into the contract as means of accomplishing its general purpose. The time at which an act is to be done, or at which a payment is to be made, is in particular cases the important and indispensable condition which the parties had in view, and the controlling consideration for making the contract; but in a great many cases, these are merely circumstances which relate to the method of attaining the purposes of the contract, and are not of a vital character. When a time has been appointed for the payment of money, there are many well known instances in which equity allows payment to be made with interest after default, and thereupon preserves the rights of the delinquent party. A very familiar instance is, the forfeiture incurred by a mortgagor upon non-payment of his debt when due. Lord ELDON said that in such case the Court acts against what is the *prime facie* import of the agreement itself. In *Decamp vs. Feay*, 5 *Serg. & R.*, 323, a vendee made a considerable default in payment of the price when due, and upon his tendering it, several months afterwards, the vendor refused to accept it, or give the deed. The Court held that the vendee was entitled to a specific performance, and the doctrine was thus laid down by GIBSON, J.: "Where time admits of compensation, as it perhaps

always does where lapse of it arises from money not having been paid at a particular day, it is never an essential part of the agreement. Neither do I consider that the subsequent agreement, by which the parties stipulated, that if the whole sum should not be paid at a certain day, the payment then made should be forfeited, and the original bargain be at an end, gave the defendant (the vendor) any additional right to rescind." While we might not be willing to adopt the absolute terms in which the eminent jurist states this doctrine, there is no doubt of the general rule. In *Derrett vs. Bowman,* 61 *Md.,* 528, it was said "the mere non-payment of the purchase money on the day it was due, would not in itself deprive the appellee of his right to insist on the specific performance of the contact; for the reason that in a case like this, time is not ordinarily of the essence of the contract, the payment of interest in the meantime being considered as a compensation to the vendor." And we find that even in a case at law, where the stipulation in a contract of sale was that the balance of the purchase money was to be paid in thirty days from date, it was held that the time of payment was not of the essence of the contract. *Scarlett vs. Stein,* 40 *Md.,* 512. In this last case the Court notice that there was no clause in the contract making it null and void, unless payment should be made at the appointed time. It was also mentioned that the circumstances attending the execution of the contract, and the subsequent acts and conduct of the parties showed that time was not intended to be a material part of the contract. In the present case there is nothing to distinguish the stipulation for payment from that which ordinarily occurs in contracts of sale. There was no intrinsic purpose, which would be defeated by delay; nor was there a condition that the contract should thereby be rendered null and void. The substantial part of the contract was that the vendor

should be paid his price for his property; and there was no special or important object to be attained by payment of the money at a precise point of time. If the vendor should be allowed to rescind the contract, the other parties would sustain great injury by the loss of their improvements, and of the large sum of money which they paid for the assignment of the lease. On the other hand the vendor will be amply compensated for the delay of payment by receiving interest on the purchase money. Interest is the compensation which the law adjudges to be the proper measure of the injury caused by failure to pay money at the time when it becomes due. This is one of the cases to which the maxim may justly be applied that "the doctrine of equity is not forfeiture but compensation."

The complainants did not give ten days notice in writing of their intention to purchase according to the requirement of the contract. In December, eighteen hundred and eighty-nine, they stated to Herbert that they did not wish more than three months extension of the lease, inasmuch as they wished to pay for the place soon, and save the rent; and thereupon he executed an instrument making the required extension, and contracting to convey the property to them on the original terms. It would have been a very useless and unmeaning form under such circumstances to give a written notice to Herbert. The necessary information had been given to him, and he had acted upon it by executing a written contract. Upon a consideration of the whole case, it appears to us to be within the principle stated by Judge Story: "Where the terms of an agreement have not been strictly complied with, or are incapable of being strictly complied with, still if there has not been gross negligence in the party, and it is conscientious that the agreement should be performed, and if compensation may be made for any injury occasioned by the non-com-

pliance with the strict terms; in all such cases Courts of equity will interfere and decree a specific performance." 2 *Story's Equity Jurisprudence, sec.* 775. It is testified that the complainants continued to remain in possession after the refusal to make a conveyance to them, and that they paid rent up to April, eighteen hundred and ninety-one. They ought to be regarded as owners from April the first, eighteen hundred and ninety, and ought to pay interest on the purchase money from that day so long as they have remained in possession, and to be allowed a rebate of the amount of rent which they have paid. They are entitled to a decree for a conveyance of the property on payment to the vendor of the sum thus found to be due.

> *Decree reversed, and cause remanded, to the intent that a decree may be passed in accordance with the opinion of this Court. Costs in the Circuit Court and in this Court to be paid by the appellee.*

(Decided 13th January, 1893.)