J. B. JONES, ADMINISTRATOR, V. J. P. GIBBS ET AL.

No. 7281. Decided July 5, 1939.
Rehearing overruled October 11, 1939.
(130 S. W., 2d Series, 265; 131 S. W., 2d Series, 957.)

628

C. A. *Leddy* and J. S. *Bracewell,* both of Houston, for plaintiff in error.

Since the timber deed provided that the time might be extended upon the payment of fifteen cents per acre per year in advance to the grantors, or by depositing that amount in the bank to their credit, and the instrument imposed no obligation on the part of grantees to make said payment or accept said extension, the same was purely an option and lapsed by failure of the grantees to make the payments as stipulated in the deed. Jonhson v. Portwood, 89 Texas 245, 34 S. W. 597; Temple Lbr. Co. v. Arnold, 14 S. W. (2d) 926; Grier v. Stewart, 136 S. W. 1176.

*Baker, Botts, Andrews & Wharton* and *Walter H. Walne,* all of Houston, for defendants in error.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

Plaintiff in error, administrator of the estate of Helen M. Jones, his deceased wife, sued defendants in error Gibbs Brothers & Company to obtain a judgment decreeing a deed by which Jones and his wife had conveyed to Gibbs Brothers & Company the merchantable pine timber on a survey of land in Walker County to be no longer operative and removing from the title the cloud cast by the claim of defendants in error of the right to cut and remove the timber under said deed. Judgment of the trial court in favor of defendants in error following an instructed verdict was affirmed by the Court of Civil Appeals. 103 S. W. (2d) 1011.

The survey of land, being the Seaborn A. Mills survey containing 1981.2 acres, was the separate property of Helen M. Jones, and on April 30, 1923, she and her husband executed a deed conveying to Gibbs Brothers & Company for a recited consideration of $5.00 and other valuable considerations paid all of the merchantable pine timber eight inches and over at

the stump on the said survey of land and granting the right to cut all of said timber on said land. It was agreed and stipulated in the deed that the grantees should reimburse the grantors for eighty per cent of all taxes assessed against the land until the timber should be cut and removed, and that the grantors should render the land and timber for taxes from year to year and pay all taxes thereon as they accrued and render bill to the grantees for the eighty per cent. The deed gave and granted to Gibbs Brothers & Company, their heirs and assigns "a full period of ten years from the date thereof within which to cut and remove said timber from and off the said land." The important question to be determined here is whether the grantees have complied with the following paragraph contained in the deed giving them the privilege of extending the ten year period provided for cutting and removing the timber:

"It is further agreed and stipulated that the grantees, their heirs, successors and assigns hereof, may have five years additional time or such part thereof as they may desire after the expiration of the ten years hereinbefore granted within which to cut and remove the timber herein conveyed, by payment to the grantors, their heirs or assigns, of the sum of fifteen cents per acre per year for the additional time or such part thereof as grantees, their heirs or assigns may desire, which payment of fifteen cents per acre per year shall be paid for as much as one year in advance, and the said payment may be made by the deposit thereof in the First National Bank of Huntsville, to the credit of the grantors, and grantees, their heirs or assigns, may have any part of said additional five years on which portions of the timber herein conveyed has not been cut at the end of the ten years free time, by making deposits of the fifteen cents per acre per year in advance in the said bank from year to year; but in no event shall the grantee, their heirs or assigns, have hereunder more than fifteen years in all within which to cut and remove the said timber."

The undisputed evidence shows that the parties to the sale of the timber estimated that there were 6,130,000 feet of timber on the survey and that the consideration in fact paid by the grantees to the grantor for the timber at the time of the execution of the deed was $26,520.00, making a price of $4.33 per thousand feet.

After the execution of the timber deed G. A. Wynne made three loans to Mr. and Mrs. Jones aggregating in principal amount $11,563.66, evidenced by notes secured by the deed of

trust against said land, executed by Mr. and Mrs. Jones on February 1, 1929, the deed of trust providing that in the event of the failure of the grantors to pay taxes on the land the owners of the notes might pay the same and that the obligations of the grantors on account of such payments should be secured by the deed of trust lien.

Mrs. Jones died intestate November 7, 1930, leaving several children. Plaintiff in error, her surviving husband, was appointed and qualified as administrator of her estate. Jones and wife failed to pay taxes on the land for the years 1923 to 1931, inclusive. G. A. Wynne, acting under orders of the probate court in Mrs. Jones' estate paid accumulated taxes against the land in a net amount of $841.53 after crediting payments received by him from Gibbs Brothers & Company, who had agreed to reimburse Jones and wife for a portion of the taxes. In the performance of that agreement Gibbs Brothers & Company paid the total sum of $3,799.26 for taxes from 1923 to 1933, inclusive. The duly verified claim of Wynne for the amount due on the notes and on account of taxes paid by him in the total sum of $16,386.15 was allowed by plaintiff in error as administrator on April 29, 1932, and approved by the probate court on June 23, 1932. No other claim than that of Wynne was filed against Mrs. Jones' estate. At the time of her death Mrs. Jones owned an interest in the home at Huntsville, a community interest in a tract of 437 acres of land inventoried by plaintiff in error at $1005.00 and a one-third interest in a 320 acre tract of land which plaintiff in error valued at $25.00 per acre.

The primary period of ten years granted for cutting and removing the timber ended on April 30, 1933, and at the end of the period defendants in error had cut and removed 1,891,000 feet, leaving 4,231,000 feet uncut, the area from which the timber had been cut containing 610 acres. On February 16, 1933, plaintiff in error J. B. Jones wrote and delivered to G. A. Wynne the following order:

"Huntsville, Texas, 2-16-1933.
"Messrs. Gibbs Bros. & Co.,
Huntsville, Texas.

Please pay Mr. G. A. Wynne the rental on the 1371.2 acres of the S. A. Mills survey at 15 cents per acre, total $205.68 due April 30th 1933.

J. B. Jones, Admr. Est. of
Mrs. Helen M. Jones, decd.

"April 30-1933.

1981.2
610

1371.2 @ 15¢ per acre $205.68.
"Deed J. B. Jones to Gibbs Bros. & Co."

Pursuant to the foregoing order Gibbs Brothers & Company on April 29, 1933, paid to Wynne the said sum of $205.68, which was credited by Wynne on his account against the estate of Mrs. Jones for taxes paid by him. On March 26, 1934, Gibbs Brothers made a like payment of $205.68 to Wynne, which was also credited by Wynne upon his tax account against the estate of Mrs. Jones. Plaintiff in error did not execute a written order directing Gibbs Brothers Company to make this last payment to Wynne, but it was made pursuant to a conversation between plaintiff in error and Wynne, which Wynne repeated, or undertook to repeat, to J. W. Oliphint, a representative of Gibbs Brothers Company.

Upon learning thereafter that plaintiff in error declined to recognize the last payment made to Wynne, Gibbs Brothers & Company, on June 7, 1934, deposited in the First National Bank of Huntsville $207.68 to the credit of plaintiff in error as administrator. Defendants in error, on April 15, 1935, deposited in the same bank $205.68 to the credit of the estate of Mrs. Jones. Plaintiff in error did not withdraw any of the money so deposited and when notified of it refused to accept it. The money deposited on June 7, 1934, was withdrawn by defendants in error on November 15, 1934. Dr. J. P. Gibbs, one of the members of the partnership, Gibbs Brothers & Company, testified that it was the purpose of the partnership to preserve their rights to the timber and to pay the amounts due, and that at all times they had been both willing and able to pay the same.

The position taken by plaintiff in error is that defendants in error no longer have the right to cut the timber remaining on the land because: (1) the original effective term of the timber deed was ten years, with provision for an extension from year to year, which was a mere option; (2) such extension provision, being a mere option, had to be strictly complied with by the grantees; (3) the grantees did not strictly comply with the extension provision in that they failed to make the annual payments in advance in 1933 and 1934 as required.

■ This court is committed by Houston Oil Company of Texas

v. Boykin, 109 Texas 277, 206 S. W. 815, to the rule that a deed conveying standing timber on a tract of land with the right to remove it within a stipulated time does not presently invest the grantees with title to the standing timber, but passes to him title to only so much timber as is removed within the time stipulated. It follows that the right of defendants in error to cut and remove the timber terminated at the end of the ten years from April 30, 1923, the date of the deed, unless they did those things necessary under the deed to extend or keep alive the right to cut and remove the timber.

■ The substance of the paragraph of the deed above quoted, giving to the grantees additional time for removal of the timber after the expiration of the ten years first granted, is that the grantees may have five years additional time, or such part thereof as they may desire, by payment to the grantors of the sum of fifteen cents per acre per year in advance from year to year. It is provided that the payment may be made either to the grantors, their heirs or assigns, or by deposit to their credit in the First National Bank at Huntsville. While the long sentence which gives the grantees the right to additional time for removal of the timber is somewhat involved, we believe it clearly appears from the use of the words "on which portions of the timber herein conveyed has not been cut at the end of the ten years free time" that the parties intended to exclude the cut-over land in computing the total amount to be paid at fifteen cents per acre per annum for the additional time.

The payment to be made for the extension is small, fifteen cents per acre per annum, which suggests that it is intended as in the nature of a rental to compensate the land owner for the use of the land while the uncut timber stands on it. We cannot, however, treat the stipulation for the payment of fifteen cents per acre per annum as merely a covenant for the payment of an annual rental, for such payment is required for the extension of the grantees' rights under the deed which terminate at the end of the ten years in the absence of the payment.

■ The right to the additional time for the removal of the timber is in the nature of an option, for the grantees may exercise it by making the payment but are not obligated to do so. It is because the right is of this nature that plaintiff in error insists that the grantees must be held to all the literal strictness of performance usually required of one who has the ordinary option to buy land. Defendants in error acquired

under the deed a right or privilege differing in two important respects from the ordinary option to buy. The holder of the ordinary option usually has paid a consideration for it and pays the purchase price for the property, or the greater part of it, only if and when he elects to exercise the option. Here defendants in error paid in full the consideration for the timber at the time the deed was executed. The ordinary option to buy real estate contemplates the execution of a deed conveying the property in the event the option is exercised, and the title and right to the property are acquired and pass under and through the deed. But, by the terms of the conveyance of the timber, the time for cutting and removing the timber is extended beyond the primary period of ten years merely by making the payment of fifteen cents per acre. When the grantee has exercised his option for the extension by making such payment, then the deed itself, as in the case of an ordinary lease of land giving to the lessee an option for extension of the term, operates to extend the term and becomes a contract both for the original and for the extended term. The deed, upon the exercising of the option to extend, becomes in effect a present grant, as of its date, of a right to the use of the land for the entire period, including the extension, and it serves as the evidence required by the statute of frauds. Hill v. Brown, 225 S. W. 780, 784; Khoure Bros. v. Jonakin, 222 Ky. 277, 300 S. W. 612; 16 R. C. L. p. 885, Sec. 389.

■ Since the privilege to extend the time for removal of the timber is given in the deed itself and is supported by the consideration paid at the execution of the deed, the agreed value of the timber, and inasmuch as the deed is treated, upon the exercising of the privilege, as a present grant for the full term, including the period of the extension, a judgment decreeing that such deed became no longer operative at the end of the primary term upon the grantees' failure to comply strictly with the terms of the provision for extension, while technically but an adjudication that the grant terminated by its own terms, would, practically considered, and certainly from the viewpoint of the grantees, amount to a forfeiture of a valuable property right for which they had fully paid. In view of these differences between the option for extension granted by the deed to defendants in error and the ordinary option to buy land, it is our opinion that, in determining whether defendants in error did those things necessary under the deed to extend the right to cut the timber, a too exactly strict compliance with the terms of the option should not be required and that the equities in favor of defendants in error,

on account of their having paid the purchase price for all of the timber and having removed less than one-third of it, should not be disregarded.

Plaintiff in error contends that Gibbs Brothers & Company in paying the renewal rentals failed to comply with the terms of the option for the following reasons: (1) because payments of the renewal rentals were not made to the heirs of Mrs. Jones; (2) because the amount should have been measured by the acreage of the entire survey rather than by the acreage of the area from which the timber had not been cut; (3) because no order of probate court was obtained authorizing the payment of the rental in 1933 to Wynne; and (4) because the payment to Wynne in 1934 was made both without an order of the probate court and without an order from plaintiff in error.

As to the first contention, it is to be observed that the paragraph of the timber deed in which the privilege of extension is given provides that the grantees, their heirs, successors and assigns may have the additional time by payment to the grantors, their heirs or assigns of fifteen cents per acre per annum, thus indicating the intention that the payment be made to the grantors, or other owners of the land, or to the person or persons who, on account of the death of the grantors or other owners, or by reason of assignment, are lawfully entitled to receive the rentals arising from the land. We find in such general language no evidence of an intention to pass the renewal rentals to the heirs rather than to the administrator or to put them beyond the reach of creditors of the estate.

The substance of Article 3314 of the Revised Civil Statutes of 1925 is that whenever a person dies intestate all of his estate, both real and personal, shall vest immediately in his heirs, but that, except such as may be exempted by law, it vests in them subject to the payment of the debts of the intestate. The article expressly gives to the administrator the right to the possession of the estate as it existed at the death of the intestate, with the exception aforesaid, the estate to be held in trust for disposition in accordance with the law. Under this statute both the title to the land and the right to the renewal rentals, as all other property of the intestate, whether real or personal, vested in the heirs but subject to the payment of the debts of the intestate. The renewal rentals that became due and were paid after Mrs. Jones' death and when the estate was in process of administration arose from and were a part of

her estate, and although the title to them vested in the heirs, they were, under the terms of Article 3314, assets of her estate subject to her debts and payable to the administrator to be disposed of in accordance with the law.

Plaintiff in error, for support of the position that the renewal rentals should have been paid to the heirs of Mrs. Jones rather than to him, relies upon authorities from other states, an examination of which shows that they merely hold that the renewal rentals should be paid to the heirs because they have title to the land from which the rentals arise. The rule announced by such authorities cannot override the express provisions of Article 3314 which make all of the property of the intestate, except that exempted, subject to the payment of the debts of the intestate, notwithstanding the fact that the title is vested in the heirs, and give the administrator the right to take possession of all of such property and to administer it.

As has hereinbefore been stated, the paragraph giving the privilege of extending the time for cutting the timber, in our opinion, clearly indicates the intention of the parties that the amount of the renewal be measured by the uncut acreage rather than the number of acres in the entire survey. If, however, it can be said that there is ambiguity in the expression of the amount to be paid, doubt as to its meaning is removed by the practical construction given to this portion of the deed by plaintiff in error, in his execution of the order to defendants in error, which has been quoted above, to pay to Wynne the rental due April 30, 1933, on 1371.2 acres, the uncut area, at fifteen cents per acre, amounting to $205.68.

To sustain the contention that the payments made by Gibbs Brothers & Company to Wynne in 1933 and 1934 were insufficient to extend the time for removal of the timber because they were not authorized by an order of the probate court, plaintiff in error cites a number of decisions holding that an administrator may not, without an order of court, accept anything other than money in payment of a debt due the estate, and that a sale of property, whether real or personal, must be supported by an order of court. Some of such cases are: Trammell v. Swan, 25 Texas 474; Browne v. Fidelity & Deposit Company of Maryland, 98 Texas 55, 80 S. W. 593; Webb v. Reynolds (Com. App.) 207 S. W. 914; Loving v. Clark, 228 S. W. 590; Harper v. Merchants' & Planters' National Bank, 68 S. W. (2d) 351. These decisions are based upon Articles 3430 and 3553 of the Revised Civil Statutes of 1925,

the one requiring an administrator to obtain an order of court before taking claims or property in payment of a debt due the estate, and the other forbidding the sale of any property belonging to the estate without an order of court authorizing the same.

In making of the payments of renewal rentals by Gibbs Brothers & Company to Wynne on the order, or at the direction, of plaintiff in error there was neither the acceptance by the administrator of a claim or of property in payment of a debt nor the sale of property belonging to the estate. The administrator in this way merely made partial payment in money of a claim against the estate, Wynne's claim on account of taxes paid by him which should have been paid by Mrs. Jones. This claim had been allowed by plaintiff in error as administrator and approved by the court. There were no other claims against the estate and there was other property of the estate which evidently was sufficient in value to pay the expenses of administration.

We find in Chapters 18 and 19 of Title 54 of the Revised Civil Statutes of 1925, which relate to the presentment and payment of claims, no requirement that the administrator obtain an order from the court before paying claims which have been allowed and approved, when he has funds of the estate sufficient for their payment. On the contrary, Article 3533 of Chapter 19 expressly makes it the duty of executors and administrators, when they have funds belonging to the estate, to pay claims in the order of their statutory priority and classification. Other articles of the same chapter authorize the owner of an unpaid claim, when the executor or administrator has funds sufficient to pay the claim, or a part thereof, and fails to make payment, to obtain an order from the court directing such payment to be made.

■ An administrator's payment of a debt of the estate without order of court and without verification of the claim is not void; and the administrator may have credit in his final account for such payment if it is shown that the debt was in fact owed by the deceased at the time of his death. Lockhart v. White, 18 Texas 102, 108; Trammell v. Blackburn, 116 Texas 388, 292 S. W. 169. If defendants in error had paid the renewal rentals directly to plaintiff in error, the payment by plaintiff in error to Wynne of the money so received, in partial settlement of Wynne's claim against the estate, would have constituted, under the facts which have been stated, a lawful payment even though made without an order of the probate court authorizing it to

be made, and plaintiff in error would have been entitled to credit for such payment on his final account. This being true, it follows that the payment of the rental to Wynne on the order of plaintiff in error, or at his direction to be applied upon Wynne's claim, was both practically and in legal effect payment of the rental to plaintiff in error. It is our opinion that the making of payment in this manner and without an order of the court authorizing it was effectual to extend the time for removal of the timber.

Plaintiff in error gave Wynne no written order directing Gibbs Brothers & Company to pay him the renewal rental due April 30, 1934, but the testimony, including that of plaintiff in error, which we have carefully examined, in our opinion clearly shows that plaintiff in error gave his consent that this rental be paid to Wynne and intended, at least until after its payment, that it should be so paid. Defendants in error acted upon plaintiff in error's expression of his willingless that the rental be paid in the same manner as in the preceding year and made payment to Wynne on March 26, 1934. The amount so paid was, like that paid in 1933, credited by Wynne upon his account against the estate for taxes.

The slight conflict between the testimony of plaintiff in error and that of Wynne as to what was said with reference to making payment of the rental to Wynne raised no ultimate issue of fact for the jury's determination. If the undisputed evidence does not establish, as we believe it does, the fact that plaintiff in error authorized or directed the payment of the 1934 rental to Wynne, it conclusively proves at least that defendant in error in making payment to Wynne acted under the honest and justifiable, if mistaken, belief that plaintiff in error had consented and directed that the payment be made in such manner.

We state briefly some of the evidence supporting the foregoing conclusions. Gibbs Brothers & Company had paid the agreed price for all of the timber at the time the deed was executed. More than two-thirds of the timber conveyed by the deed was still uncut. The payment required for the extension was small, $205.68. On his own initiative plaintiff in error had given Wynne an order to Gibbs Brothers & Company directing them to pay him the 1933 rental in like amount. It was paid to Wynne and credited on his account against the estate for taxes advanced by him. There still remained a balance due Wynne on that account in excess of the amount of the rental for 1934.

Plaintiff in error testified that in a conversation with Wynne he asked him whether he wanted an order for the 1934 rent, the option money for 1934, and that Wynne did not answer the question. He testified further that he asked Wynne the question because he wanted to help him in paying the taxes. Wynne testified that in this conversation plaintiff in error promised he would give him an order for the 1934 rental, that a short time thereafter Oliphint, representing Gibbs Brothers & Company, asked him whether he, Wynne, was to have the payment for 1934, that he told Oliphint plaintiff in error had told him he could have it and that a few days thereafter Gibbs Brothers & Company made the payment to him. Wynne further testified that when he learned from Gibbs Brothers & Company that plaintiff in error had repudiated the payment he asked plaintiff in error why he had refused to recognize the payment after having promised to give him an order for it and that plaintiff in error did not deny having made the promise, but answered: "That was before you sued me." Oliphint's testimony with respect to the information given him by Wynne and the action of defendants in error in making the payment in reliance upon that information is substantially the same as the testimony of Wynne.

On June 7, 1934, immediately after learning that plaintiff in error was declining to recognize the payment made to Wynne, Gibbs Brothers & Company deposited $207.68 in the First National Bank of Huntsville to the credit of plaintiff in error as administrator.

It follows from what has been said that if the payment of the renewal rental on March 26, 1934, was made to Wynne at the direction of plaintiff in error, there was compliance on the part of defendants in error with the provisions of the deed for extension of the time for removal of the timber, and that if plaintiff in error did not direct the payment to be made to Wynne, there was not such compliance and the time was not extended, unless by reason of the peculiar facts and special circumstances equity may grant relief from a literal enforcement of the conditions prescribed by the deed.

■ The rule announced and applied in a number of decisions, construing provisions for extension similar to those contained in the deed in the instant case, is that the grantee must strictly comply with the terms and conditions of the agreement for the extension and will not be given equitable relief in the absence of such compliance, because the agreement is an option, or in the nature of an option, and unilateral in its

obligation. Temple Lumber Co. v. Arnold, (Tex. Civ. App.) 14 S. W. (2d) 926; Hall v. W. M. Ritter Lumber Co., 167 Va. 95, 187 S. E. 503; Murphy v. Schuster Springs Lumber Co., 215 Ala. 412, 111 So. 427; W. T. Smith Lumber Co. v. Wallace, 218 Ala. 546, 119 So. 663; Allison v. Forehand, 219 Ala. 170, 121 So. 532; Bateman v. Kramer Lumber Co. 154 N. C. 248, 70 S. E. 474, 34 L. R. A. (N. S.) 615. See also Johnson v. Portwood, 89 Texas 235, 34 S. W. 596, 787; Williston on Contracts (1920 Ed.) Vol. 2, Sec. 853, p. 1634; James on Options, Sec. 848, p. 376.

That the rule announced by the foregoing authorities is not an absolutely inflexible one is evidenced by the authorities hereinafter cited and discussed.

It is held that failure of the optionee to comply strictly with the terms or conditions of the option will be excused when such failure is brought about by the conduct of the optionor. Montague Corporation v. E. P. Burton Lumber Company, 136 S. C. 40, 134 S. E. 147; Cromartie v. Virginia-Carolina Lumber Company, 173 N. C. 712, 91 S. E. 945; Wilson v. Herbert, 76 Md. 489, 25 Atl. 685; James on Options, Sec. 863, p. 403.

Other facts than fault of the optionor will furnish a basis for equitable interference to prevent termination of the optionee's right. The Connecticut Supreme Court of Errors, in a carefully considered opinion, reversed and rendered a judgment in favor of the landlord and ordered a new trial, to the end that the tenant might present in detail the extent of the hardship he would suffer from the enforcement of a requirement of the lease that he give notice thirty days before the expiration of the term of his desire to extend the lease. F. B. Fountain Co. v. Stein, 97 Conn. 619, 118 Atl. 47, 50, 27 A. L. R. 976. The court construed the thirty-days clause as a condition precedent which must be performed before the extended or renewed term could begin and held that the lessee, not having given the notice within the stipulated time, had no right to relief unless it could establish a waiver or such facts as would bring it within the power of equity to relieve. In prescribing the conditions for granting of relief upon equitable grounds, the court said in substance that, while relief cannot be afforded if the failure to give notice has been due to willful or gross neglect, equity will relieve, in the absence of such neglect, when the failure results from fraud, surprise, accident or mistake. It said further:

"In cases of mere neglect in fulfilling a condition precedent of a lease, which do not fall within accident or mistake, equity·

will relieve when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease."

In Xanthakey v. Hayes, 107 Conn. 459, 140 Atl. 808, the Connecticut court carefully reviewed and followed its holding in the case last cited, giving additional reasons and authorities for its decision. The lease gave the lessee the privilege of extension after the end of the term, but expressly provided that the lease would terminate and that the extension would not be given unless the lessee gave written notice at least sixty days before the end of the term. The lessee erected improvements of the value of $4,000.00 upon the premises in expectation of enjoying its occupancy during the extended term and established thereon a profitable business. Due to mere forgetfulness and not to willful or gross negligence, the lessee failed to give within the required time the notice of his desire to extend the term. The court affirmed the judgment of the trial court for a mandatory injunction requiring the lessor to renew the lease and restraining her from interfering with the lessee in his enjoyment of the leased premises. The gist of the decision is that it would be unconscionable to enforce literally the condition for the extension when to do so would cause the lessee, who had not been grossly negligent, to lose the value of the improvements and the good will of the established business.

The Supreme Court of South Carolina, in Pope v. Goethe, 175 S. C. 394, 179 S. E. 319, 321, 99 A. L. R. 1005, refused equitable relief to the grantee in a timber deed which gave an option for an extension of the term to be exercised by written notice ninety days prior to the end of the term. Relief was denied because the notice was not given and there was no proof of waiver or that the failure of the grantee to exercise the option in the required manner was due to any misleading representation or conduct of the grantor. In its statement of the rule controlling its decision, the court, however, thus recognized the qualification to the rule as announced in F. B. Fountain Company v. Stein, supra:

"Where a lessee has a right of renewal, provided he gives notice at or before a specified time to the lessor of his intention to exercise the privilege of renewal, in the absence of waiver, the giving of the notice is a condition precedent which must be complied with within the stipulated time; and, *in the absence of special circumstances warranting a court of equity in grant-*

*ing relief,* the right to a renewal is lost if the notice is not given in accordance with the provisions of the lease. F. B. Fountain Co. v. Stein, 97 Conn. 619, 118 A. 47; 27 A. L. R. 976 and annotation." (Our Italics).

In Gloyd v. Midwest Refining Company, 62 Fed. (2d) 483, the United States Circuit Court of Appeals for the Tenth District affirmed the trial court's judgment in favor of the lessee in the lessor's suit to cancel an "unless" oil and gas lease for failure of the lessee to pay the renewal rental on or before the date named in the lease. The lessor had requested the lessee to pay the rental to him instead of making payment to the depository designated in the lease. A week before the last day for payment lessee deposited in the postoffice at Denver a letter containing a check for the rental properly addressed to the lessee at Oklahoma City. The letter was lost in the mail. Immediately upon discovery of the fact that the letter had been lost, lessee transmitted to lessor another check for the rental, which was refused because the time for payment had passed.

It was held that the lessee was entitled to equitable relief, because the failure of the payment to reach the lessor was due to an accident resulting from causes over which the lessee had no control and because, further, the lessee acted promptly upon being advised that the letter had not reached the lessor. The court recognized the general rule that equity will not grant relief to an optionee who has lost his option by failure to make payment within the time stipulated, but held, citing authorities, that "the rule is different where the option is given for a valuable consideration and other grounds of equitable jurisdiction exist, such as accident or mistake."

The text of James on Option Contracts, after a summary of the general rules, to the effect that an optionee who desires to turn his option into a binding promise on the part of the optioner must make his election unconditionally and within the time and in the manner and on the exact terms expressed in the contract, and that his failure to meet these requirements works an end to his option rights, contains the following:

"It becomes necessary now to present the view that these rules, the strict enforcement of which was so much insisted upon by the early decisions, are, nevertheless, subject to, and qualified by, certain other overruling equitable rules, in accordance with which courts of equity grant relief in cases involving fraud or mistake and likewise, under special circumstances, where performance is prevented by accident, and also enforce the rule of estoppel where the conduct of the optionor

has been such as to make that rule applicable." Sec. 863, pp. 402-403.

■ If it is assumed that plaintiff in error did not direct the payment of the rental for 1934 to be made to Wynne, then the facts and circumstances proven by the undisputed evidence and which have hereinbefore been set out are such in our opinion, as to bring the case within the qualification established by the foregoing authorities to the strict rule generally applied to options. The case is one for the application of "overruling equitable rules." The action of defendants in error in making payment to Wynne instead of to plaintiff in error, if not caused, as it seems to have been in part at least, by the conduct of plaintiff in error, was not due to willful or gross negligence on the part of defendants in error, but was rather the result of an honest and justifiable mistake. The termination of the right to take the timber would cause defendants in error to lose the value of more than two-thirds of the timber for which they paid and transfer that value to those, or the heirs of those, to whom full payment had once been made. We are unwilling to hold that a court of equity is without authority to prevent such unconscionable hardship.

The trial court's judgment is attacked as erroneous because of want of necessary parties, the propostion presented being that, while plaintiff in error as administrator of the estate of Mrs. Jones was authorized to file suit for adjudication of the rights of defendants in error to cut the timber, defendants in error were not authorized to seek or obtain affirmative relief without making the heirs of Mrs. Jones parties to the suit.

We agree with the conclusion expressed by the Court of Civil Appeals in its opinion wherein it said: "As we view appellees' trial pleadings, they do not present an affirmative action against the estate of Helen M. Jones nor broaden the issues tendered by appellant's petition."

The purpose of plaintiff in error's suit, as shown by the allegations of fact and the prayer contained in his petition, is to obtain a judgment declaring that the right of defendants in error under the timber deed have terminated and removing the cloud cast upon the title by the claim under the deed. The answer of defendants in error contains no cross action against plaintiff in error. The many paragraphs are composed of allegations of facts in defense of the suit. The prayer at the conclusion of the answer is as follows:

"WHEREFORE having fully answered herein, defendants pray that plaintiff's prayer for the removal of the alleged cloud from the title to the timber described in plaintiff's petition be denied, that defendants have decrees of the Court establishing and adjudicating their continued right in and to said timber and that they have such other and further relief as under the law and facts they may show themselves entitled to."

This is not an affirmative prayer for a judgment against the plaintiff for title. In substance it asks for nothing more than a denial to the plaintiff of what he seeks by his petition. Thomason v. Sherrill, 118 Texas 44, 10 S. W. (2d) 687. The judgment rendered by the trial court is that the plaintiff take nothing by his suit and that the defendants recover of and from the plaintiff the continued right to the timber under the timber deed. When construed in the light of the pleadings, the part of the judgment which awards to the defendants the continued right under the deed is a mere negation of the plaintiff's asserted claim, or in other words, an adjudication that the right under the timber deed has not terminated.

All assignments of error in the application for the writ have been carefully considered and none of them presents reversible error.

The judgments of the district court and the Court of Civil Appeals are affirmed.

Opinion adopted by the Supreme Court July 5, 1939.

### ON MOTION TO DISMISS, ETC.

PER CURIAM:

■ In each of these causes defendants in error have filed, after decision of the cause and the filing of motion for rehearing by plaintiff in error but before disposition of the motion for rehearing, a motion praying for dismissal of the case on account of the failure of plaintiff in error to file a bond upon the granting of writ of error and, in the alternative, for the entry of an order requiring plaintiff in error to file such bond.

When the writs of error were granted the court inadvertently failed to make orders requiring plaintiffs in error to file bonds and specify the amounts thereof in accordance with the requirments of Article 1747 of the Revised Civil Statutes of 1925, as amended in 1930. While Article 2276 of

the Revised Civil Statutes provides that executors, administrators and guardians shall not be required to give bond on any appeal or writ of error taken by them in their fiduciary capacity, it has been held that it was not intended by said article, which is found in a chapter of the statutes relating exclusively to appeals and writs of error from the trial court to the Court of Civil Appeals, to lay down a rule as to writs of error from the latter courts to the Supreme Court, and that the provision governing in cases of writs of error to the Supreme Court is found in Article 1747, which does not. exempt executors, administrators or guardians from compliance with its requirements. Daniel v. Mason, 90 Texas 162, 37 S. W. 1061.

The motions to dismiss are overruled. However, an order will this day be entered in each of these causes requiring the plaintiff in error within ten days from this date to file in the trial court a bond in the sum of $100.00 and to cause a certified copy of the same within said time to be transmitted to the clerk of this court, as provided by said Article 1747.

Delivered October 11, 1939.

Rehearing overruled October 25, 1939.