⚠ Caution
As of: May 11, 2015 11:54 AM EDT

## *Crown Constr. Co. v. Huddleston*

Court of Appeals of Texas, Fourth District, San Antonio

December 17, 1997, Delivered ; December 17, 1997, Filed

No. 04-96-00991-CV

**Reporter**

961 S.W.2d 552; 1997 Tex. App. LEXIS 6452

**Prior History:** [**1] From the 224th Judicial District, Bexar County, Texas. Trial Court No. 96-CI-15376. Honorable David Peeples, Judge Presiding.

**Disposition:** Affirmed.

## Core Terms

notice, lease, trial court, delivery, personal delivery, equitable relief, contends, summary judgment motion, deliver, ambiguous, door, summary judgment, issue of fact, days, tape, no writ, lessee, terms of the lease, matter of law, provides, lessor, certified mail, renewal option, forfeiture, clarified, expired, argues, renew, non-movant, delayed

## Case Summary

### Procedural Posture

Appellant sought review of summary judgment granted in favor of appellee by the 224th Judicial District, Bexar County (Texas) in a declaratory judgment action regarding a lease renewal dispute.

### Overview

Appellant sought review after the trial court granted summary judgment in favor of appellee in a declaratory judgment action regarding a lease renewal dispute. Appellant contended, among other things, that the trial court erred because a fact issue existed as to whether sufficient notice was given to extend the lease in question, and whether appellant was entitled to equitable relief. The court found that appellant failed to properly deliver notice of its intent to exercise its lease renewal option under the terms of the lease. Specifically, the lease in question provided for notice either by personal deliver to appellee, or to appellee's agent, or by certified mail. Here, appellant failed to exercise personal delivery because the renewal notice was only tapped to the agent's door. Further, the court found that the

facts surrounding the delayed delivery of notice did not warrant an award of equitable relief. Accordingly, the judgment was affirmed.

### Outcome

The summary judgment, which was granted in favor of appellee in the lease renewal dispute with appellant, was affirmed because the court concluded that appellant failed to give sufficient notice of given to extend the lease in question, and was not entitled to equitable relief.

## LexisNexis® Headnotes

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > Burdens of Proof

Civil Procedure > Appeals > Summary Judgment Review > General Overview

Civil Procedure > Appeals > Summary Judgment Review > Standards of Review

Civil Procedure > ... > Summary Judgment > Burdens of Proof > General Overview

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Movant Persuasion & Proof

Civil Procedure > ... > Summary Judgment > Hearings > General Overview

Civil Procedure > ... > Summary Judgment > Motions for Summary Judgment > General Overview

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > General Overview

*HN1* In order to prevail on a motion for summary judgment, the movant either must prove that no genuine issue of material fact exists, affirmatively disprove at least one element of the plaintiff's cause of action, or prove an affirmative defense as a matter of law. In any case, the movant bears the burden of proving that he is entitled to judgment as a matter of law. On review, the appellate court

must take as true all evidence favoring the non-movant and indulge every reasonable inference in his favor.

> Civil Procedure > Pleading & Practice > Pleadings > Answers

> Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > General Overview

> Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

> Civil Procedure > Judgments > Summary Judgment > General Overview

> Civil Procedure > Appeals > Summary Judgment Review > General Overview

> Civil Procedure > Appeals > Summary Judgment Review > Appealability

> Civil Procedure > ... > Summary Judgment > Burdens of Proof > General Overview

> Civil Procedure > ... > Summary Judgment > Motions for Summary Judgment > General Overview

*HN2* A non-movant that fails to file a response in a summary judgment proceeding is limited to raising legal sufficiency points on appeal. While summary judgments must stand or fall on their own merits and the non-movant's failure to answer cannot result in a default summary judgment, if the non-movant does in fact fail to respond, all that may be argued on appeal is whether the movant established his right to summary judgment as a matter of law.

> Civil Procedure > ... > Summary Judgment > Supporting Materials > General Overview

> Civil Procedure > ... > Summary Judgment > Supporting Materials > Affidavits

*HN3* An affidavit is an appropriate means of responding to a motion for summary judgment.

> Contracts Law > Contract Interpretation > General Overview

> Contracts Law > Defenses > Ambiguities & Mistakes > General Overview

*HN4* Whether a contract is ambiguous is a question of law for the court to decide. If the contract is ambiguous, then the question of the true meaning of the contract becomes one of fact for a jury to decide.

> Contracts Law > Contract Interpretation > General Overview

> Contracts Law > Contract Interpretation > Ambiguities & Contra Proferentem > General Overview

> Contracts Law > Defenses > Ambiguities & Mistakes > General Overview

> Contracts Law > Formation of Contracts > Mistake > General Overview

*HN5* If a contract is worded so that a court may properly give it a definite or certain legal meaning or interpretation, then it is not ambiguous. A contract is ambiguous only when there exists a genuine uncertainty as to which of two meanings is proper. However, an ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. In order for an ambiguity to exist, both interpretations must be reasonable.

> Contracts Law > Contract Interpretation > General Overview

*HN6* All terms of a contract must be given effect where possible.

> Contracts Law > Remedies > Equitable Relief > General Overview

> Contracts Law > Types of Contracts > Option Contracts

*HN7* It is well settled that strict compliance with the provisions of an option contract is mandatory in nature, and, generally, equitable relief will not be extended absent such compliance. Acceptance of an option, unless excused in rare cases of equity, must be unqualified, unambiguous, and strictly in accordance with the terms of the agreement Accordingly, a failure to exercise an option according to its terms, including untimely or defective acceptance, is simply ineffectual, and legally amounts to nothing more than a rejection.

> Civil Procedure > ... > Relief From Judgments > Excusable Mistakes & Neglect > Mistake

> Civil Procedure > Judgments > Relief From Judgments > Independent Actions

> Contracts Law > Defenses > Ambiguities & Mistakes > General Overview

> Contracts Law > Defenses > Unconscionable > General Overview

> Contracts Law > Remedies > Equitable Relief > General Overview

> Contracts Law > Types of Contracts > Option Contracts

*HN8* In order to establish a right to relief under the doctrine of unconscionable equity, the party seeking equitable relief must show (1) that the delayed failure to exercise an option contract was the result of an honest and justifiable mistake; and (2) that, if the delay is not excused, unconscionable hardship will result.

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > General Overview

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > Unclean Hands

Contracts Law > Types of Contracts > Lease Agreements > General Overview

*HN9* The doctrine of unclean hands is applied to one whose own conduct in connection with the matter at issue has been unconscientious, unjust, or marked by a want of good faith, or one who has violated the principles of equity and righteous dealing.

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > Unclean Hands

Contracts Law > Remedies > Equitable Relief > General Overview

*HN10* It is well settled that a party seeking equity cannot come into a court with unclean hands.

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule

*HN11* While it is true that there can be only one final appealable judgment in any lawsuit, *Tex. R. Civ. P. 301*, as long as the trial court has plenary power, a judgment is not technically final.

Civil Procedure > Judgments > Relief From Judgments > Altering & Amending Judgments

Governments > Courts > Authority to Adjudicate

*HN12* Pursuant to *Tex. R. Civ. P. 329b*, the trial court has the power to correct, modify, vacate, or reform a judgment during the 30 days that it retains plenary jurisdiction over a case.

**Counsel:** FOR APPELLANT: Samuel H. Bayless, A. W. Worthy, GRESHAM, DAVIS, GREGORY, WORTHY & MOORE, P.C., San Antonio, TX.

FOR APPELLEE: Thomas G. Kemmy, San Antonio, TX.

**Judges:** Opinion by: Karen Angelini, Justice. Sitting: Phil Hardberger, Chief Justice, Alma L. Lopez, Justice, Karen Angelini, Justice.

**Opinion by:** KAREN ANGELINI

# Opinion

[*554] Appellant, Crown Construction Company, Inc.("Crown"), appeals from the granting of summary judgment in favor of appellee, H. Glenn Huddleston ("Huddleston") in a declaratory judgment action regarding a lease renewal dispute. In five points of error, Crown contends that the trial court erred in granting Huddleston's motion for summary judgment because: (1) a fact issue exists as to whether sufficient notice was given to extend the lease in question; (2) Crown is entitled to equitable relief as a matter of law; (3) a fact issue exists as to whether Crown is entitled to equitable relief; (4) a fact issue exists as to whether Crown's delay in giving notice was due to a cause beyond its control; [**2] and (5) the trial court erred in failing to identify the real property at issue in its order granting summary judgment. Crown also brings a supplemental point of error in which it contends, generally, that Huddleston failed to establish that there are no issues of fact in dispute and that he is entitled to judgment as a matter of law. We affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1976, Huddleston leased commercial property to Southland Corporation for a term of twenty years. In July of 1992, Crown took the lease by assignment. Under the terms of the lease, the lease terminated on August 31, 1996. However, the lease provided for a five-year renewal option, which required written notification of the exercise of the option on or before June 2, 1996.

Crown contends that it gave written notice of its intent to renew the lease by taping the notice to the door of Huddleston's office on June 2, 1996. Huddleston denies receipt of that notice. On June 12, 1996, Crown delivered a second notice to Huddleston, dated June 2, 1996. Huddleston acknowledges receiving the second notice. Huddleston, however, refused to renew the lease because Crown's notice [**3] of its intent to renew the lease was not timely given. Huddleston further contends that at the time he denied the lease renewal, Crown was in default of the lease provisions by failing to pay common area maintenance fees, tax escalation fees, and insurance escalation fees.

Crown brought suit against Huddleston, seeking a judgment declaring that it validly exercised it option to extend the term of the lease, or, in the alternative, that it is excused from strict compliance with the notice provision in the lease based upon principles of equity. Huddleston filed a motion for summary judgment, alleging that Crown failed to timely exercise its option under the lease and that Crown is not

MATT SOLIDAY

entitled to judgment based [*555] upon equity because it was in default of the lease agreement at the time it attempted to exercise its option. Crown filed an affidavit in response to Huddleston's motion. Following a hearing, the trial court granted Huddleston's motion for summary judgment. All other issues raised by the pleadings in this case were severed and assigned a new cause number.

## ARGUMENT AND AUTHORITY

### A. Standard of Review

*HN1*

In order to prevail on a motion for summary [**4] judgment, the movant must either prove that no genuine issue of material fact exists, affirmatively disprove at least one element of the plaintiff's cause of action, or prove an affirmative defense as a matter of law. *Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548 (Tex. 1985)*; *Ross v. Arkwright Mut. Ins. Co., 892 S.W.2d 119, 127* (Tex. App.--Houston [14th Dist.] 1994, no writ). In any case, the movant bears the burden of proving that he is entitled to judgment as a matter of law. *TEX. R. CIV. P. 166a(c)*. On review, the appellate court must take as true all evidence favoring the non-movant and indulge every reasonable inference in his favor. *Park Place Hosp. v. Milo, 909 S.W.2d 508, 510 (Tex. 1995)*; *Montgomery v. Kennedy, 669 S.W.2d 309, 311 (Tex. 1984)*.

### B. Scope of Review

Huddleston argues that, because Crown failed to respond to Huddleston's motion for summary judgment at the trial level, the scope of Crown's appeal should be limited. It is true that *HN2* a non-movant who fails to file a response in a summary judgment proceeding is limited to raising legal sufficiency points on appeal. *City of Houston v. Clear Creek Basin Auth.* [**5] *, 589 S.W.2d 671, 678 (Tex. 1979)*; *McCord v. Memorial Medical Center Hosp., 750 S.W.2d 362, 364* (Tex. App. --Corpus Christi 1988, no writ). "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." *McConnell v. Southside Ind. School Dist., 858 S.W.2d 337, 343 (Tex. 1993)* (quoting *TEX. R. CIV. P. 166a(c)*). While summary judgments must stand or fall on their own merits and the non- movant's failure to answer cannot result in a "default" summary judgment, if the non-movant does in fact fail to respond, all that may be argued on appeal is whether the movant established his right to summary judgment as a matter of law. *Id.*; *Clear Creek, 589 S.W.2d at 678*.

In this case, Crown did not file a response to Huddleston's motion for summary judgment, but it did file, in opposition to Huddleston's motion, the affidavit of Masood Chughtai, an owner of Crown Construction Company, Inc. Chughtai's affidavit controverted many of the facts alleged in Huddleston's motion. There is a conflict in authority regarding whether the filing of an affidavit alone in response to a motion for summary [**6] judgment qualifies as a response as contemplated by *Rule 166a*. *Compare Shank, Irwin,Conant & Williamson v. Durant, Mankoff, Davis, Wolens & Francis, 748 S.W.2d 494, 498* (Tex. App.--Dallas 1988, no writ) (holding affidavit did not constitute written answer or other response expressly presenting non-movant's issues to the trial court) *with Hall v. Stephenson, 919 S.W.2d 454, 462* (Tex. App.--Fort Worth 1996, writ denied) (finding that "affidavits alone are an appropriate way to respond to a summary judgment motion"); *Rosas v. Bursey, 724 S.W.2d 402, 408* (Tex. App.--Fort Worth 1986, no writ) (finding that an "affidavit is an appropriate means of responding to a motion for summary judgment") *and Engel v. Pettit, 713 S.W.2d 770, 772* (Tex. App.--Houston [14th Dist.] 1986, no writ) (construing portion of the *Rule 166a(c)* which provides that a nonmovant may file "an opposing affidavit or other written response" within seven days of a hearing to mean that the filing of an affidavit alone, without any additional responsive document, is adequate as a response under the rule); *see* TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS § 4.04 (2nd ed. 1996). [**7]

We find that *HN3* an affidavit is an appropriate means of responding to a motion for summary judgment. We further find that, in this case, Crown's affidavit placed the court and Huddleston on notice of issues which raise fact questions in the case, thus preserving those issues for appeal. Our review of [*556] Crown's appeal will, therefore, go beyond a legal sufficiency review.

### C. Adequate Notice

#### 1. Ambiguity in the Lease Agreement

In its first point of error, Crown contends that the trial court erred in granting summary judgment in favor of Huddleston because a fact issue exists regarding whether, under the terms of the lease, notice affixed to Huddleston's door constituted sufficient notice to extend the lease. The lease at issue provides that Crown had an option to extend the term of the lease for a period of five years. The lease further provides that, if Crown intended to exercise the option, it was required to give Huddleston written notice at least ninety days prior to the expiration of the then current lease term. As to the term "notice," the lease states that:

Any notices required or permitted hereunder shall be in writing and delivered either in person [**8] to the other party or the other party's authorized agent, or by United States Certified Mail, Return Receipt Requested, postage fully prepaid….

Crown contends, first, that the phrase "delivered in person" does not require in hand delivery to the receiving party, but that it refers to the action taken by the delivering party. Therefore, according to Crown, it personally delivered the notice to Huddleston, under the terms of the lease, when Mr. Chughtai, Crown's owner, personally taped the notice to Huddleston's door. Crown goes on to argue that because Huddleston denies receiving the notice, a fact issue exists as to whether the notice was given. In the alternative, Crown argues that the lease agreement is ambiguous as it fails to specifically define personal delivery, and as such, the case should be remanded for a determination of the intended meaning of the lease.

Accordingly, before the issue of whether Crown did or did not tape the notice to the door is reached, it will be necessary to determine whether such a delivery constitutes personal delivery as contemplated by the lease. As discussed above, Crown argues that personal delivery refers to the action of the deliverer only, [**9] while Huddleston contends that personal delivery means both personal delivery by the deliverer and personal receipt by the receiver.

*HN4* Whether a contract is ambiguous is a question of law for the court to decide. *Friendswood Dev. Co. V. McDade + Co., 926 S.W.2d 280, 282 (Tex. 1996)*. If the contract is ambiguous, then the question of the true meaning of the contract becomes one of fact for a jury to decide. *Columbia Gas Trans. Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996)*.

*HN5* If a contract is worded so that a court may properly give it a definite or certain legal meaning or interpretation, then it is not ambiguous. *Friendswood*, 926 S.W.2d at 282. A contract is ambiguous only when there exists a genuine uncertainty as to which of two meanings is proper. *Columbia Gas, 940 S.W.2d at 589*. However, an ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994). In order for an ambiguity to exist, both interpretations must be reasonable. *National Union Fire Ins. Co. v. CBI Industries, Inc., 907 S.W.2d 517, 520 (Tex. 1995)*.

In this case, [**10] we find no ambiguity in the notice provision of the contract. Crown's interpretation of "personal

delivery" is not reasonable when viewed in light of the remainder of the notice provision of the lease. *See Coker v. Coker, 650 S.W.2d 391, 394 (Tex. 1983)* (holding ambiguity in a contract is determined by looking at the entire contract and giving effect to each of its provisions). The lease provides for notice either by personal delivery to the recipient or to the recipient's agent or by certified mail, return receipt requested. To interpret personal delivery to mean that the delivering party may simply drop off notice at the recipient's office with no guarantee that it was ever received would be at odds with the remainder of the notice provision. Specifically, such an interpretation would discount the requirement that delivery of notice by mail must be via certified mail, return receipt requested.

The certified mail requirement emphasizes the importance of confirmation of receipt of notice. Otherwise, delivery by regular mail [*557] would have been acceptable under the lease. The apparent purpose of certified mail, return receipt requested is to provide proof of delivery. [**11] The corollary to that requirement in personal delivery situations would be actual person to person delivery. Absent such a requirement, there would be, as there is in this case, no proof of the personal delivery. It is not a reasonable interpretation of the lease to say that where there are two equally acceptable means of delivering notice, one option would require proof of delivery while one option would not.

Further, the personal delivery requirement allows for delivery to the receiving party or his agent. If personal delivery meant that the delivering party could tape notice to the receiving party's door, there would be no need for the option of delivering to the receiving party's agent. *HN6* All terms of the contract must be given effect where possible. *Coker, 650 S.W.2d at 394*. Accordingly, the only reasonable interpretation of the term "delivery in person" in the lease at issue includes a requirement that the delivery be actual hand to hand delivery. Therefore, by taping notice to Huddleston's door, Crown failed to properly deliver notice of its intent to exercise its lease renewal option under the terms of the lease. Crown's first point of error is overruled.

*2. Events* [**12] *Beyond Crown's Control*

In its fourth point of error, Crown contends that the trial court erred in granting Huddleston's motion for summary judgment because a fact issue exists as to whether Crown's delay in giving notice was due to events beyond Crown's control. In making this argument, Crown relies on paragraph 38D of the lease, which provides that:

Whenever a period of time is herein provided for LESSOR or LESSEE to do or perform any act or thing, LESSOR shall

not be liable or responsible for, and there shall be excluded from the computation of such period of time, any delays due to strikes, riots, acts of God, shortages of labor or materials, national emergency, acts of a public enemy, governmental restrictions, laws or regulations, or any other cause or causes, whether similar or dissimilar to those enumerated, beyond its reasonable control.

Crown argues that the summary judgment evidence in this case shows that Crown attempted to deliver notice of its intent to extend the lease on June 2, 1996, but that it was prohibited from doing so because Huddleston's office was closed and Huddleston was not there to receive the notice in person. Crown contends [**13] that whether Huddleston was in his office, or could otherwise be found, was a matter beyond Crown's control. Therefore, according to Crown, the fact that it did not actually deliver notice to Huddleston until June 12, 1996, should not be considered in determining whether the notice was timely given. We disagree.

First, a reasonable interpretation of paragraph 38D is that it applies only to Huddleston, the lessor. The paragraph states that, in regard to time periods in which the lessor or lessee has to perform under the lease, "the *lessor* shall not be liable or responsible for…any cause…beyond *its* reasonable control." Under this interpretation of the lease, Crown, as the lessee, is not entitled to the protection afforded by paragraph 38D.

In any event, it is undisputed that Crown did not attempt to deliver notice after allegedly taping it to Huddleston's door until June 12, 1996, ten days after the option deadline expired. Even if we were to construe Huddleston's absence from his office on a Sunday as an event beyond Crown's control, there were at least eight business days following that uncontrollable event in which Crown could have reattempted delivery. Crown does not [**14] allege that events beyond its control occurred on June 3, 1996, through June 12, 1996. Therefore, paragraph 38D does not exonerate Crown from the untimely delivery of its notice, even if we do not consider June 2, 1996, in the computation of time. Crown's fourth point of error is overruled.

## D. Equity and the Doctrine of Unconscionable Forfeiture

In its second point of error, Crown contends that it is entitled to equitable relief from the effect of its untimely notice as a matter of law. In its third point of error, Crown contends that there is a fact issue regarding whether it is entitled to equitable [*558] relief. Crown bases its equitable argument on the fact that it delivered notice to Huddleston only ten days after the option expired and that it would be substantially harmed by forfeiture of the lease while Huddleston would suffer no harm if the lease were extended.

We begin by noting the strict compliance requirement in option contract situations. *HN7* It is well settled that strict compliance with the provisions of an option contract is mandatory in nature, and, generally, equitable relief will not be extended absent such compliance. *See Jones v. Gibbs*, 133 [**15] *Tex. 627, 130 S.W.2d 265, 271 (1939)*. Acceptance of an option, unless excused in rare cases of equity, must be unqualified, unambiguous, and strictly in accordance with the terms of the agreement. *Zeidman v. Davis, 161 Tex. 496, 342 S.W.2d 555, 558 (1961)*. Accordingly, a failure to exercise an option according to its terms, including untimely or defective acceptance, is simply ineffectual, and legally amounts to nothing more than a rejection. *Atterbury v. Brison, 871 S.W.2d 824, 829* (Tex. App.--Texarkana 1994, writ denied) (Cornelius, J., concurring).

The doctrine of unconscionable, inequitable, or disproportionate forfeiture was established in the case of *Jones v. Gibbs*. The court in that case stated that a lessee's delay in giving written notice of its intention to exercise a lease renewal option should be excused when the delay has been slight, the loss to the lessor would be small, and undue hardship would result if relief was withheld. *130 S.W.2d at 272*. At least one court has held the language in *Jones* to be dicta and refused to apply the doctrine in situations in which a lessee simply neglected to exercise its renewal option on time. *See Reynolds-Penland* [**16] *Co. v. Hexter & Lobello, 567 S.W.2d 237, 240* (Tex. Civ. App. --Dallas 1978, writ dism'd by agr.). This court, however, has recognized the doctrine and applied it in a case involving the delayed exercise of an option to extend a lease. *See Inn of the Hills, Ltd. v. Schulgen & Kaiser, 723 S.W.2d 299, 301* (Tex. App.--San Antonio 1987, writ ref'd n.r.e.). *HN8* In order to establish a right to relief under the doctrine of unconscionable equity in cases such as this, the party seeking equitable relief must show (1) that the delayed failure to exercise an option contract was the result of an honest and justifiable mistake; and (2) that, if the delay is not excused, unconscionable hardship will result. *See Jones*, 130 S.W.2d at 273; *Casa El Sol- Acapulco, S.A. v. Fontenot, 919 S.W.2d 709, 715* (Tex. App. --Houston [14th Dist.] 1996, writ dism'd by agr.).

In this case, the evidence, other than whether the notice was taped to Huddleston's door on June 2, 1996, is undisputed. Crown acknowledges that it was aware, prior to June 2, 1996, that the option expired on that date. It also acknowledges that after it allegedly taped the notice to Huddleston's office door, it did [**17] not attempt to

contact Huddleston again until June 12, 1996. Then, on June 12, 1996, Crown delivered notice in writing to Huddleston's agent. Crown never confirmed receipt of the June 2 notice. In the face of undisputed facts, the propriety of equitable relief is a question of law for the court, subject to an abuse of discretion standard of review on appeal. *Fontenot, 919 S.W.2d at 715*. Because the facts surrounding Crown's equitable argument are undisputed, Crown's third point of error alleging that a fact issue exists regarding whether equity should be applied in this case is overruled. We must now consider, whether the trial court erred in finding that Crown was not entitled to equitable relief as a matter of law.

We find that the facts surrounding the delayed delivery of notice in this case do not warrant an award of equitable relief. As discussed above, in order to be entitled to equitable relief, Crown must demonstrate that its delayed notice was the result of an honest and justifiable mistake. *See Jones*, 130 S.W.2d at 273. Such a mistake was shown in *Jones* where the lessee made his lease renewal option payment to the wrong party based upon a previous, but no [**18] longer effectual, communication by the lessor. *Id.* at 267. In *Inn of the Hills*, this court found an honest and justifiable mistake where the lease renewal option payment was due shortly after the lease assignment and [*559] the new lessee was unaware of the option deadline. *Inn of the Hills*, 723 S.W.2d at 300.

In this case, Crown has failed to show an honest and justifiable mistake. The summary judgment evidence indicates that Crown was aware of the option deadline when it assumed the lease. It was also aware of the option deadline shortly before it expired. However, knowing the lease required the option to be delivered either personally or via certified mail, Crown waited until the day the option expired to tape the notice to Huddleston's door. Then, Crown never attempted to confirm delivery of the notice. In both *Jones* and *Inn of the Hills*, the lessees attempted to remedy their mistakes as soon as they were discovered. *See Jones*, 130 S.W.2d at 273; *Inn of the Hills*, 723 S.W.2d at 300.

If, in fact, it was a mistake for Crown to believe it would find Huddleston at his office in order to personally deliver the notice to him in a timely manner, [**19] the mistake would not be justified since Crown did not attempt to again deliver the notice to Huddleston until twelve days later. Under these circumstances, it is difficult to say that the trial court abused its discretion in finding that Crown was not entitled to equitable relief.

Further, Huddleston asserts the doctrine of unclean hands in opposition to Crown's request for equity. Specifically,

Huddleston urges that Crown cannot claim entitlement to equitable relief because Crown was in breach of the lease at the time it attempted to exercise its option. Crown acknowledges that it has failed to pay common area maintenance fees as required by the lease; however, because the lease provides that such failure shall not result in a forfeiture of the lease, Crown argues that it's failure to pay the fees cannot be used as a bar to its request for equitable relief. Crown's reasoning is flawed. Even if failure to pay common area maintenance fees cannot work to cause a forfeiture of the actual lease, it does constitute a breach of the terms of the lease. This is not a situation involving the forfeiture of an ongoing lease; rather, it involves the failure to exercise an option to extend the [**20] original lease term. Therefore, there is nothing to prohibit Crown's breach from operating as a bar to Crown's assertion of an equitable remedy in its attempt to renew the lease.

*HN9* The doctrine of unclean hands is applied to one whose own conduct in connection with the matter at issue has been unconscientious, unjust, or marked by a want of good faith, or one who has violated the principles of equity and righteous dealing. *Ligon v. E.F. Hutton & Co., 428 S.W.2d 434, 437* (Tex. Civ. App.--Dallas 1968, writ ref'd n.r.e.); *34 TEX. JUR .3d Equity § 32* (1984). Because Crown is in breach of the lease it is now attempting to extend, it may not seek relief from the provisions of that lease based upon claims of equity. *HN10* It is well settled that a party seeking equity cannot come into a court with unclean hands. *Schenck v. Ebby Halliday Real Estate, Inc., 803 S.W.2d 361, 366* (Tex. App.--Fort Worth 1990, no writ); *Village Medical Center*, *Ltd. v. Apolzon, 619 S.W.2d 188, 191* (Tex. Civ. App.--Houston [1st Dist.] 1981, no writ). Crown's second point of error is overruled.

### E. Validity of the Judgment

In its fifth point of error, Crown contends that the judgment [**21] in this case is invalid because it does not describe the property at issue. The original summary judgment order, entered October 17, 1996, provides that Huddleston shall "have restitution and possession of the described premises." However, the judgment fails to describe the premises. On October 24, 1996, the trial court entered an order in response to Huddleston's motion to clarify the original judgment. The second order clarifies the first by stating that "the premises for which Huddleston was granted possession in the final judgment of October 17, 1996, is located at 8001 Broadway, San Antonio, Bexar County, Texas 78209."

Crown contends that the second order is not effective to correct or clarify the first order because it fails to revoke and

replace the first order. Thus, according to Crown, the second order is a nullity and the first judgment controls in this case. Crown argues that because the first judgment fails to [*560] identify the property at issue, it is unenforceable and the case should be reversed. *HN11* While it is true that there can be only one final appealable judgment in any lawsuit, *TEX. R. CIV. P. 301*, as long as the trial court has plenary power, a judgment is [**22] not technically final. *Fruehauf Corp. v. Carrillo, 848 S.W.2d 83, 84 (Tex. 1993)*. *HN12* The trial court has the power to correct, modify, vacate, or reform a judgment during the thirty days that it retains plenary jurisdiction over a case. *TEX. R. CIV. P. 329b*; *Faulkner v. Culver, 851 S.W.2d 187, 188 (Tex. 1993)*.

Crown relies on *Mullins v. Thomas, 136 Tex. 215, 150 S.W.2d 83 (1941)*, for the proposition that the entry of a second judgment in the same case is a nullity if there is nothing to show that the first was vacated. *150 S.W.2d at 84*. What Crown fails to recognize, however, is that *Mullins* and its progeny deal with cases in which there are two purportedly final judgments. *See*, *e.g.*, *City of Westlake Hills v. State, 466 S.W.2d 722, 726-27 (Tex. 1971)*; *Mullins, 150 S.W.2d at 84*; *Azbill v. Dallas Co. Child Protective Serv., 860 S.W.2d 133, 139* (Tex. App.--Dallas 1993, no writ). In this case, there is only one judgment. Seven days after the judgment was entered, the trial court entered an order in which it specifically referred to the judgment at issue and then clarified the terms of that judgment. The order clarifying the judgment does not [**23] purport to supersede or vacate the judgment. It simply defines the judgment, leaving no question as to either the disposition of the case or to what property the judgment refers.

We find that the trial court's clarification order was a valid exercise of its plenary power over the judgment. Accordingly, the first judgment, as clarified, became final and enforceable thirty days after the clarification order was entered. *See Check v. Mitchell, 758 S.W.2d 755 (Tex. 1988)* (stating that if a judgment is modified, corrected, or reformed *in any respect* the appellate timetable begins to run as of the date of the correction). Crown's fifth point of error is overruled.

The judgment of the trial court is affirmed.

KAREN ANGELINI

JUSTICE